David C. Radulescu (DR-9873)
Tarra L. Zynda (TZ-8165)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8906
Facsimile:  (212) 310-8007

*Of counsel*:

David J. Healey
Amber H. Rovner
Andrew R. Swartz
Larry D. Thompson, Jr.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana St., Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys For Respondent and Cross-Petitioner,
SAMSUNG ELECTRONICS CO., LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of Arbitration between<br><br>INTERDIGITAL COMMUNICATIONS CORPORATION, a Pennsylvania corporation, and INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation,<br><br>      Petitioners,<br><br>and<br><br>SAMSUNG ELECTRONICS CO., LTD., a corporation existing under the laws of the Republic of Korea,<br><br>      Respondent. | Case No.  1:06-cv-6833 KMK<br><br>ECF Case<br><br>**SAMSUNG'S BRIEF IN SUPPORT OF CROSS-PETITION TO VACATE ARBITRATION AWARD**<br><br>**REDACTED PUBLIC VERSION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

TABLE OF ABBREVIATIONS .................................................................................. iv

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

       A.     The Samsung Agreements ...................................................................... 2

       B.     The Nokia Patent License Agreement .................................................. 3

       C.     The *Samsung I* Arbitration Proceedings ............................................. 3

       D.     The Ericsson Settlement Agreement and Patent License Agreements ................... 4

       E.     The Nokia/InterDigital Arbitration ....................................................... 6

       F.     Initiation of the *Samsung II* Arbitration Proceedings ........................... 8

       G.     The Nokia Settlement and Its Impact on the *Samsung II* Arbitration ................... 8

              1.     InterDigital and Nokia Enter into the Nokia Settlement ............................. 8

              2.     The *Samsung II* Panel Seeks Clarification of the Nokia Settlement's Effect ................ 10

              3.            ..................................................................................... 11

              4.     Samsung Expressly Refutes InterDigital's
                     .................................. 13

       H.     The *Samsung II* Award ......................................................................... 15

              1.     The Panel Refuses to Consider Evidence of the Nokia Settlement ........... 15

              2.     The Panel Resolves the Disputes in InterDigital's Favor .......................... 15

       I.     Samsung's Election of the Nokia Settlement            ..................... 16

III.    ARGUMENT ................................................................................................ 17

    A.    The Panel Committed Misconduct In Violation of Section 10(a)(3) By Ignoring Material Evidence of the Nokia Settlement

                             .................................................................... 17

    B.    The Panel Manifestly Disregarded Controlling Law By Acknowledging, But Refusing To Follow, the Doctrine of Collateral Estoppel, Which Requires Affording Preclusive Effect to the *Samsung I* Award In Determining the Royalty Rate Payable by Samsung ........................................... 21

        1.    The Law of Collateral Estoppel Was Well Defined, Explicit and Clearly Applicable To Render the Determinations of the *Samsung I* Award Binding on the Parties ................................................................... 21

        2.    The *Samsung II* Panel Appreciated the Applicability of Collateral Estoppel to the *Samsung I* Award, But Otherwise Ignored It, Relying Instead on the Nonbinding *Nokia* Award ..................................... 22

    C.    The Panel Manifestly Disregarded Controlling Law and the Terms of the Samsung PLA By Awarding Interest,
                        .................................................................... 25

IV.    CONCLUSION:  RELIEF REQUESTED ................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Am. Ins. Co. v. Messinger,*
   43 N.Y.2d 183 (1977) ................................................................................................ 22

*Gulf Coast Indus. Workers Union v. Exxon Co., USA,*
   70 F.3d 847 (5th Cir. 1995) ...................................................................................... 20

*Hardy v. Walsh Manning Secs., L.L.C.,*
   341 F.3d 126 (2d Cir. 2003) ...................................................................................... 21

*Hoteles Condado Beach, La Concha and Convention Ctr. v.*
   *Union De Tronquistas Local 901,* 763 F.2d 34 (1st Cir. 1985) .............................. 20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,*
   808 F.2d 930 (2d Cir. 1986) ...................................................................................... 21

*O'Connor v. G&R Packing Co.,*
   74 A.D.2d 37 (N.Y. App. Div. 1980) ........................................................................ 22

*Odfjell ASA v. Celanese AG,*
   380 F. Supp. 2d 297 (S.D.N.Y. 2005) ...................................................................... 18

*Tempo Shain Corp v. Bertek, Inc.,*
   120 F.3d 16 (2d Cir. 1997) ........................................................................................ 18

**Statutes**

9 U.S.C. § 10 ................................................................................................................. 1

9 U.S.C. § 10(a)(3) ...................................................................................................... 18

9 U.S.C. § 10(b) ............................................................................................................ 2

**Rules**

ICC RULES OF ARBITRATION, ARTICLE 22(1). ......................................................... 14

**Treatises**

73A N.Y. JUR. 2D JUDGMENTS § 458 ......................................................................... 22

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| 2G | Second Generation |
| 3G | Third Generation |
| Ericsson | Ericsson Inc. |
| FAA | Federal Arbitration Act |
| ICC | International Chamber of Commerce |
| IDC | InterDigital Communications Corporation |
| InterDigital | Petitioners and Cross-Respondents InterDigital Communications Corporation and InterDigital Technology Corporation |
| ITC | InterDigital Technology Corporation |
| MFL | Most Favored Licensee |
| Nokia | Nokia Corporation |
| *Nokia* Award | Final Award dated July 5, 2005 rendered by the ICC Arbitral Tribunal in *Nokia Corp. vs. InterDigtal Technology Corp., et al.,* ICC Case No. 12 829/JNK/EBS |
| Nokia PLA | Patent License Agreement between Nokia Corp., InterDigital Communications Corp. and InterDigital Technology Corp. |
| Nokia Settlement | Arbitration Settlement Agreement between InterDigital Communication Corp., InterDigital Technology Corp., and Nokia Corp. |
| PLA | Patent License Agreement |
| Samsung | Respondent and Cross-Petitioner Samsung Electronics Co., Ltd. |
| *Samsung I* | Arbitration proceedings in Samsung Electronics Co., Ltd. vs. InterDigital Communications Corporation, ICC Case No. 12022/TE (award issued by the ICC Arbitral Tribunal on December 16, 2002) |
| *Samsung II* | Arbitration proceedings in Samsung Electronics Co., Ltd. vs. InterDigital Technology Corporation, et al., ICC Case No. 13 033/JNK/EBS (award issued by the ICC Arbitral Tribunal on August 28, 2006) |

CONFIDENTIAL:  FILED UNDER SEAL

## TABLE OF ABBREVIATIONS (cont'd)

Samsung MA          Master Agreement between Samsung Electronics Co., Ltd., and InterDigital Communications Corporation and InterDigital Technology Corporation

Samsung PLA         Patent License Agreement between Samsung Electronics Co., Ltd., and InterDigital Technology Corporation

Sony Ericsson       Sony Ericsson Mobile Communications AB

TDMA                Time Division Multiple Access

CONFIDENTIAL:  FILED UNDER SEAL

## I.     INTRODUCTION

The core controversy presented in the arbitration before this Court concerns a patent-licensing agreement between Samsung and InterDigital (the "Samsung PLA") and the royalty rate allegedly owed by Samsung under that agreement.  The parties' rights and obligations under the Samsung PLA have been the subject of two arbitration proceedings in the Court of Arbitration of the International Chamber of Commberce ("ICC").     The first arbitration ("*Samsung I*"), decided in December 2002, concerned Samsung's handset royalties for 1999 to 2001 ("Period 1").  The present petition relates to the second arbitration ("*Samsung II*"), decided in August 2006, which dealt with Samsung's handset royalties for 2002 to 2006 ("Period 2").

Although Samsung disagrees with many of the panel's findings and conclusions in the *Samsung II* award—including interpretation of several provisions of the relevant agreements—Samsung appreciates the deference afforded the panel's findings under federal law.  Samsung's petition therefore leaves unchallenged the vast majority of the panel's conclusions.

Nevertheless, the *Samsung II* panel committed two fundamental errors that require vacating its award under Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 ("the FAA"), and the common-law doctrine of manifest disregard of the law:

- **Arbitral Misconduct Under Section 10(a)(3) of the FAA.**  An arbitration panel commits misconduct warranting vacatur when it unreasonably excludes material evidence.  Samsung demonstrated that a post-hearing settlement between InterDigital and Nokia was material because it fundamentally undercut InterDigital's arguments about Samsung's royalty obligations.

    Because this conclusion contradicts Samsung's express denials of any such agreement, should the *Samsung II* Award be vacated?

- **Manifest Disregard of Collateral Estoppel Principles.**  An arbitration award may be vacated when the panel acknowledges the existence of a clearly governing legal principle, but ignores it.  The *Samsung II* panel expressly recognized that, under collateral estoppel principles, the determinations made in *Samsung I* controlled the same issues in *Samsung II*.

1

Should the *Samsung II* Award be vacated?

This brief demonstrates that both issues should be answered in the affirmative.[1]

The panel committed an additional error, also in manifest disregard of the law,

This error

warrants vacatur of at least the interest portion of the *Samsung II* Award.

## II.    BACKGROUND[2]

### A.    The Samsung Agreements

Two agreements between the parties, both executed in December 1995, were the subject of

the arbitration proceedings:

---

[1] Because the time has expired for rendering the award, no rehearing is permitted or appropriate. *See* 9 U.S.C. § 10(b). To the extent that the parties' dispute remains unresolved following vacatur, the parties may initiate a new arbitration—which Samsung has already done in view of changed circumstances, as noted *infra*.

[2] *See also* Samsung's Opposition to InterDigital's Petition for Order Confirming Arbitration Award and Samsung's Cross-Petition To Vacate or Modify Arbitration Award and To Stay Award, filed September 12, 2006 (Dkt. No. 6), incorporated herein by reference.

[3] References to "Ex. __" are to the numbered exhibits attached to the Declaration of Tarra L. Zynda, filed concurrently herewith.

[4] "TDMA" stands for "Time Division Multiple Access," which is a method of wireless transmission used in wireless telephony, the technical details of which are not material to the present dispute.

**B.    The Nokia Patent License Agreement**

Subsequent to its agreements with Samsung, InterDigital entered into a license agreement with Nokia Corporation, a competitor of Samsung. The Nokia Patent License Agreement ("Nokia PLA") created two periods for royalty payments. [*Id.* at § 3.1] For Period 1 (January 29, 1999 through December 31, 2001), the Nokia PLA provided that Nokia would pay a lump sum, subject to possible upward adjustment. [*Id.* at § 3.1.1] For Period 2 (2002-2006), the Nokia PLA made Nokia's royalty obligations contingent on InterDigital's licensing a "Major Competitor" of Nokia. [*Id.* at § 3.1.2] In the event of a Major Competitor license, the Nokia PLA set forth a specific rate-setting process that would serve as the        means for deriving from that license the Period 2 royalty rate applicable to Nokia. [*Id.* at § 3.1.2(C)]

**C.    The *Samsung I* Arbitration Proceedings**

The ensuing

3

discussions revealed a dispute between the parties over:

After extensive negotiations failed to resolve the disputes, InterDigital commenced an arbitration (*Samsung I*) with the Secretariat of the ICC.  On December 16, 2002, the arbitration panel ruled in Samsung's favor.  [Ex. 4 at 31-33]

**D.**    **The Ericsson Settlement Agreement and Patent License Agreements**

Several years later, in March of 2003, InterDigital settled nearly a decade of litigation with Ericsson Inc. ("Ericsson").  As conditions of dismissal of the litigation, Ericsson, its related entity, Sony Ericsson Mobile Communications AB ("Sony Ericsson"), and InterDigital entered into several related agreements.

4

[*Id.* at §§ 3.1, 3.2]

Although Sony Ericsson was not a party to the Ericsson Litigation, InterDigital and Sony Ericsson also entered into a Patent License Agreement (the "Sony Ericsson PLA") covering TDMA patents used in cellular handsets. [Ex. 7]

Because Sony Ericsson's 2002 licensed sales were considerably above that year's cutoff for the lowest rate, and there was no expectation that they would drop below that cutoff in subsequent years,

Having designed these rate tables with its prior licensees in mind, InterDigital immediately deemed execution of these agreements with Ericsson and Sony Ericsson to impact

5

both Nokia and Samsung.  [*See* Ex. 9 (Mar. 17, 2003 InterDigital Press Release)]

E.    **The Nokia/InterDigital Arbitration**

The dispute between InterDigital and Nokia regarding Nokia's Period 2 royalty obligations resulted in an arbitration commenced by Nokia in July 2003 with the ICC.  Nearly two years later, in June 2005, the *Nokia* panel announced its award in a divided decision.

6

The *Nokia* Award was later confirmed by this Court. *InterDigital Comms. Corp. v. Nokia Corp.*, CA No. 05-cv-6180 (S.D.N.Y.) (Dec. 28, 2005 Mem. Op.).

### F.    Initiation of the *Samsung II* Arbitration Proceedings

As InterDigital and Nokia were resolving their dispute over Period 2 royalties allegedly owed by Nokia, Samsung and InterDigital also negotiated their dispute over Period 2 royalties allegedly owed by Samsung. Those negotiations were also unsuccessful, leading Samsung to commence the *Samsung II* arbitration in                      which is now before this Court.

The parties proceeded to an evidentiary hearing in                      and completed post-hearing briefing in

### G.    The Nokia Settlement and Its Impact on the *Samsung II* Arbitration

#### 1.    InterDigital and Nokia Enter into the Nokia Settlement

On April 27, 2006, while Samsung and InterDigital were awaiting an award in the *Samsung II* Arbitration, InterDigital and Nokia entered into a settlement agreement ("Nokia Settlement"). [Ex. 18]

---

[5] "2G," or second generation, refers to the technology currently used in mobile communication systems, which includes TDMA and CDMA technologies. The next generation of mobile communications systems, or "3G," offers multimedia and internet access and the ability to view video footage.

2.    **The *Samsung II* Panel Seeks Clarification of the Nokia Settlement's Effect**

The *Samsung II* panel was initially very interested in the effect of the Nokia Settlement on Nokia's (and hence Samsung's) royalty rates.

The panel invited further responsive submissions by the parties.



10

**3.**

Following a                                     the panel

                    called for yet additional briefing from the parties, allowing the

parties to further respond to each other's arguments.

            The panel further set a provisional date for a hearing on

                    InterDigital submitted a ten-page letter brief.  [Ex. 28 (June 1, 2006 letter

from R. Shulman to panel)]  Therein, InterDigital first attempted to circumvent review of the

Nokia Settlement



InterDigital further argued that Samsung's only basis for raising the Nokia Settlement was a

mistaken "assumption"

11

In its responsive letter brief, Samsung first addressed InterDigital's attempt to deflect consideration of the Nokia Settlement,

Samsung then returned to its central point, asserting that the Nokia Settlement was still critical evidence

In reply to Samsung's arguments, InterDigital continued its move to exclude consideration of the Nokia Settlement by stating that

12

4.    **Samsung Expressly Refutes**

Immediately following InterDigital's reply, the panel

The panel appeared to

accept InterDigital's claim that

The panel invited Samsung to respond to InterDigital's          submission, promising

that                                                             [*Id.* at 2]

Samsung  accepted  the  panel's  invitation  to  respond.

Samsung expressly corrected what it perceived to be a mischaracterization

by InterDigital, leading to a misapprehension by the panel, that

_____

13

Samsung further raised several arguments supporting the Nokia Settlement's relevance.  [*Id*. at 1-6]

InterDigital immediately complained to the panel that, by even discussing the relevance of the Nokia Settlement, Samsung's                letter exceeded the scope

In its next and final communication to the parties before issuing the *Samsung II* Award, the panel apparently denied InterDigital's request

Chairman King's                letter to the parties announced

More importantly, however, the letter also

thus indicated that

Samsung's                letter correcting the panel's misapprehension was timely and would be

---

[8] Under ICC rules, once the panel has closed the hearings, "no further argument may be made, or evidence produced" without the panel's permission.  *See* ICC RULES OF ARBITRATION, ARTICLE 22(1): "When it is satisfied that the parties have had a reasonable opportunity to present their cases, the Arbitral Tribunal shall declare the proceedings closed.  Thereafter, no further submission or argument may be made, or evidence produced, unless requested or authorized by the Arbitral Tribunal."  ICC RULES OF ARBITRATION, ARTICLE 22(1).

considered by the panel, but that InterDigital's subsequent letter of          was untimely and would not be considered.    The panel did not indicate that it maintained its earlier misapprehension that Samsung

### H.    The *Samsung II* Award

#### 1.    The Panel Refuses to Consider Evidence of the Nokia Settlement

The *Samsung II* panel issued its Award on August 28, 2006.  [Ex. 12]  In that award, the panel alluded to the parties'                                    but explained that it ultimately had

                                    [*Id.* at 49]  The panel's sole stated basis for its refusal to consider the Nokia Settlement was its belief that

                                    [*Id.*]  Although it accepted the tables attached to Samsung's          letter into the record, the panel made no mention of

                                                                    [*Id.* at 39]

#### 2.    The Panel Resolves the Disputes in InterDigital's Favor

On the merits of the claims before it, the panel began its analysis with Samsung's argument—

15

I.    **Samsung's Election of the Nokia Settlement**

Confirming the impact of the Nokia Settlement on the parties' rights and obligations,

Samsung has elected the Nokia Settlement

Because the parties dispute the terms of the Nokia Settlement as applied to Samsung's Period 2 royalty obligations, Samsung initiated yet another arbitration on October 26, 2006 ("*Samsung III*"). [Ex. 36]

## III.    ARGUMENT

### A.    The Panel Committed Misconduct In Violation of Section 10(a)(3) By Ignoring Material Evidence of the Nokia Settlement

Samsung is entitled to relief as a result of the *Samsung II* panel's violation of the Federal Arbitration Act, which authorizes vacatur of an arbitration award "where the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the

---

[9] Samsung will further discuss the mootness issue in its November 22, 2006, brief in opposition to InterDigital's petition to enforce the *Samsung Award*. Pursuant to the Court's September 25, 2006 endorsement of Samsung's proposed schedule, Samsung's present brief focuses only on reasons to vacate the *Samsung II* Award.

17

controversy . . . ." 9 U.S.C. § 10(a)(3); *see also Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 20-21 (2d Cir. 1997) (vacating an arbitration award because the panel excluded a key witness from testifying at the hearing).   To warrant vacating an arbitration award for arbitrator misconduct, "[t]he misconduct must amount to a denial of fundamental fairness of the arbitration proceeding . . . .." *Tempo Shain,* 120 F.3d at 19-20; *see also Odfjell ASA v. Celanese AG,* 380 F. Supp. 2d 297, 302-303 (S.D.N.Y. 2005) (arbitration panel's refusal to allow party to present evidence in support of privilege claim was "tantamount to a denial of elementary fairness").   An arbitration panel commits misconduct amounting to a denial of fundamental fairness when that panel refuses to consider pertinent and material evidence on grounds that lack a reasonable basis in the record. *See, e.g., Tempo Shain,* 120 F.3d at 20-21 (arbitrator's refusal to continue hearing to allow noncumulative testimony by key witness "amount[ed] to fundamental unfairness and misconduct sufficient to vacate the award pursuant to section 10(a)(3) of the FAA" when "there was no reasonable basis for the arbitration panel to determine that [the witness's] omitted testimony would be cumulative").

The *Samsung II* panel committed misconduct in unreasonably refusing to consider evidence of the April 27, 2006 Nokia Settlement, which was pertinent and material to the *Samsung II* arbitration.

Samsung's letter to the panel summed up the fatal blow that the Nokia Settlement dealt to InterDigital's claims:

18

The Nokia Settlement was crucial to the *Samsung II* panel's analysis because, among

other reasons,                              *                                                    and

could not form any basis for the *Samsung II* panel's determination of Samsung's royalty

obligations under any theory—whether

[Ex. 12 at 35, 49] The

panel's refusal to consider the Nokia Settlement was based on a premise without any reasonable

justification in the record—*i.e.*, that

This flatly erroneous premise, first suggested by InterDigital, was

expressly rebutted by Samsung in a lengthy submission to the panel well over a month before the

Award was issued and before the proceedings had closed.  The panel simply had no reasonable

basis in the record to believe that such an agreement existed.

Federal courts have vacated arbitration awards where, as here, the arbitrator unreasonably

refused to consider evidence.  *See, e.g., Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70

19

F.3d 847 (5th Cir. 1995) (holding that because "[t]he arbitrator used Exxon's failure to present evidence that he told Exxon not to present as a predicate for ignoring the test results," this was misconduct that "falls squarely within the scope of Section 10, and is grounds for vacatur."). Like the arbitrator in *Gulf Coast*, the *Samsung II* panel also improperly based its refusal to consider evidence of the Nokia Settlement on unreasonable grounds—

        The *Samsung II* panel's unreasonable reliance on an alleged             invented by InterDigital—despite Samsung's strident and explicit protests to the contrary—is no less egregious than the arbitrator's conduct in *Gulf Coast*.

        Moreover, vacatur for refusal to hear evidence under section 10(a)(3) also comprehends situations in which, as is the case here, the evidence         

        *See, e.g., Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39-40 (1st Cir. 1985) (holding that "evidence <u>effectively excluded</u> by the arbitrator was both central and decisive to the [employer's] position; therefore, the arbitrator's refusal to consider this evidence was . . . so destructive of [the employer's] right to present [its] case, that it warrants the setting aside of the arbitration award") (emph. added). In this case, the *Samsung II* panel likewise refused to consider any evidence of the Nokia Settlement,

        The *Samsung II* panel's refusal to consider the Nokia Settlement is fundamentally unfair because InterDigital         

                          The Nokia Settlement, however, demonstrated that the *Nokia* Award

        For instance,

20

Despite the importance of the Nokia Settlement to the resolution of the dispute between InterDigital and Samsung, the *Samsung II* panel refused to consider the settlement as evidence and, instead,

The *Samsung II* panel's refusal to consider the Nokia Settlement based on

—violated Section 10(a)(3) of the FAA and warrants vacatur.

**B.    The Panel Manifestly Disregarded Controlling Law By Acknowledging, But Refusing To Follow, the Doctrine of Collateral Estoppel, Which Requires Affording Preclusive Effect to the *Samsung I* Award In Determining the Royalty Rate Payable by Samsung**

A further, and independent, basis for vacatur of the *Samsung II* Award is the panel's acting in manifest disregard of the law by acknowledging the law of collateral estoppel yet failing to apply it to the binding determinations of the *Samsung I* Award. [*See* Ex. 12 at 16] *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (noting that "manifest disregard of the law" by arbitrators is a judicially created ground for vacating their arbitration award). The Second Circuit applies a two-pronged test, authorizing a finding of manifest disregard of the law if: (1) the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable; and (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore or pay no attention to it. *See Hardy v. Walsh Manning Secs., L.L.C.*, 341 F.3d 126, 129 (2d Cir. 2003) (applying two-prong test to vacate award for manifest disregard of *respondeat superior* law).

**i.    The Law of Collateral Estoppel Was Well Defined, Explicit and Clearly Applicable To Render the Determinations of the *Samsung I* Award Binding on the Parties**

Because the *Samsung I* arbitration involved the same parties and overlapping issues, the

21

*Samsung I* Award was entitled to preclusive effect in the *Samsung II* arbitration under the well-established principles of collateral estoppel. New York law

recognizes that a prior arbitration award between the same parties is normally accorded *res judicata* or collateral estoppel effect. *See* 73A N.Y. JUR. 2D JUDGMENTS § 458; *Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 189-90 (1977) ("[I]n general, the doctrines of claim preclusion and issue preclusion between the same parties apply as well to awards in arbitration as they do to adjudications in judicial proceedings.").[10]

The *Samsung II* panel correctly recognized the proper application of collateral estoppel to the two relevant prior arbitrations in the *Samsung II* arbitration. The *Samsung II* panel recognized the preclusive effect of the *Samsung I* Award,

The *Samsung II* panel also correctly determined that the *Nokia* Award findings

But the panel committed manifest error, however, in tacitly inverting its analysis, by effectively affording preclusive effect to the *Nokia* Award over the *Samsung I* Award in ascertaining the proper methodology for calculating the royalties owed by Samsung for Period 2.

2.    **The *Samsung II* Panel Appreciated the Applicability of Collateral Estoppel to the *Samsung I* Award, But Otherwise Ignored It, Relying Instead on the Nonbinding *Nokia* Award**

The *Samsung I* and *Samsung II* arbitration proceedings each involved the determination

---

[10] Moreover, the collateral estoppel effect of an arbitration award extends to decisions on issues of law necessary to the award's conclusion. *See O'Connor v. G&R Packing Co.*, 74 A.D.2d 37, 44 (N.Y. App. Div. 1980) ("[I]ssues of law and questions of fact necessarily decided by a court of competent jurisdiction remain binding upon the parties ... in all subsequent litigation in which the same issues are material.").

of the royalty rate to be applied to Samsung's sales—for Period 1 and Period 2, respectively.

The *Samsung II* panel, however, inexplicably ignored the *Samsung I* methodology on this point, even though it had earlier acknowledged the                    of the *Samsung I* Award on the issues decided therein.  [Ex. 12 at 36-41]

_____

23

Reliance on the nonbinding methodology from the *Nokia* Award, instead of the binding methodology from the *Samsung I* Award, was manifest error.  Once the *Samsung II* panel determined that

the panel was required to apply the methodology of the *Samsung I* Award to compute Samsung's royalty obligation under the Samsung PLA.

The *Samsung II* panel did not do so, however, nor did it attempt to justify its departure from the *Samsung I* Award methodology.

This manifest error warrants vacatur of the *Samsung II* Award.

24

C.    **The Panel Manifestly Disregarded Controlling Law and the Terms of the Samsung PLA By Awarding Interest,**

The *Samsung II* panel's award of interest was also premised on an

Thus, the *Samsung II* Award contradicts the binding *Samsung I* Award, and must be vacated to the extent of that contradiction.

IV.    **CONCLUSION: RELIEF REQUESTED**

For the reasons set forth herein, this Court should vacate the *Samsung II* Award in its entirety. In the alternative, the Court should vacate the interest portion of the *Samsung II* Award.

Date:  <u>October 27, 2006</u>                          Respectfully submitted,


                                                         s/ David C. Radulescu
                                                          David C. Radulescu (DR-9873)
                                                          Tarra L. Zynda (TZ-8165)
                                                          WEIL, GOTSHAL & MANGES LLP
                                                          767 Fifth Avenue
                                                          New York, NY  10153
                                                          Telephone:  (212) 310-8906
                                                          Facsimile:  (212) 310-8007

*Of counsel:*                                            ATTORNEYS FOR RESPONDENT AND
                                                         CROSS-PETITIONER
David J. Healey                                          SAMSUNG ELECTRONICS CO., LTD.
Amber H. Rovner                                          (REPUBLIC OF KOREA)
Andrew R. Swartz
Larry D.  Thompson, Jr.
700 Louisiana, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**CERTIFICATE OF SERVICE**

I hereby certify that Samsung's Brief in Support of Samsung's Cross-Petition to Vacate or Modify Arbitration Award was served via email, pursuant to party agreement, to the following on the 27th of October, 2006.

> Ron E. Shulman
> Michael B. Levin
> Greg Wallace
> WILSON SONSINI GOODRICH & ROSATI
> 650 Page Mill Road
> Palo Alto, CA  94304-1050
>
> Sammi Malek
> WILSON SONSINI GOODRICH & ROSATI
> 1301 Avenue of the Americas, 40th Floor
> New York, NY  10019
>
> Mark D. Flanagan
> Nathan L. Walker
> WILMER CUTLER PICKERING HALE AND DORR, LLP
> 1117 California Avenue
> Palo Alto, CA  94304

I hereby certify that a CD containing the exhibits to the Declaration of Tarra L. Zynda in Support of Samsung's Cross-Petition to Vacate or Modify Arbitration Award, pursuant to party agreement, has been sent via overnight FedEx to the following on the 27th of October, 2006.

> Michael B. Levin
> Greg Wallace
> WILSON SONSINI GOODRICH & ROSATI
> 650 Page Mill Road
> Palo Alto, CA  94304-1050
> (650) 493-9300

> _____ s/ Andrew K. Bell _____
> Andrew K. Bell